Macdonald v. Flamme.

AMY MACDONALD, Respondent, *against* JULIA FLAMME, Appellant.

(Decided January 21st, 1884.)

In an action by a tenant of premises hired for a boarding house against the landlord for damages for fraudulent representations by him that the premises were in perfect order, especially the plumbing, where the damage alleged is loss of rent of rooms vacated by lodgers on account of noxious odors from the pipes, plaintiff, in order to recover, must prove that such odors were caused by the bad condition of the plumbing; and where, upon the evidence, it appears that the odors may have been caused by want of water on the upper floors, of which plaintiff had notice before taking the house, and there is only an inference that the noxious smell was due to one cause and not to the other, a recovery cannot be sustained.

APPEAL from a judgment and order of the General Term of the Marine Court of the City of New York affirming a judgment of that court entered upon a verdict and an order denying a motion for a new trial.

The facts are stated in the opinion.

*Abram Kling*, for appellant.

*John Brooks Leavitt*, for respondent.

J. F. DALY, J.—This action is brought by a tenant against the landlord to recover damages for fraudulent representations that the premises let for the purpose of keeping boarders were " in perfect order, especially the plumbing, every way fit for the purpose of keeping boarders, and that the plumbing was in splendid order." The damage alleged was the loss of the rent of rooms vacated by tenants on account of noxious odors and smells from the pipes.

The proof presented by plaintiff showed that the defendant let her the house for the purpose of keeping boarders ; that defendant then told her that the plumbing was in good

order; that she had recently paid $600 for having it put in good order; that the house was entirely suitable for a boarding house; in perfect order; but that defendant showed her that the water did not run in the upper part of the house in the day time and only ran at night. Plaintiff's proof then showed that as soon as she went into possession she noticed smells from the water closet and on the top floor; it did not affect the lower part of the house; that she complained to defendant, who put in a pump for her in July; that the lodger who occupied the second floor back moved out on account of the smell, but it does not appear from where it came; that the lodger in the top floor front room noticed the noxious odors, but does not say he moved on that account; that the boarder who occupied the top floor back room noticed noxious odors, but he did not move; that the occupant of a small room on the top floor refused to remain on account of the odors from the stationary bath tubs; that plaintiff's son noticed noxious odors; and that the surety on plaintiff's lease, who boarded in the house, noticed an offensive smell in different rooms. It was not shown that any of these smells existed before plaintiff occupied the house; nor that they became so violent as to cause lodgers to leave, until the fall when windows were closed and rooms heated.

Plaintiff's proof also showed that no such sum as $600 had been spent on the plumbing; and, by the testimony of Mr. Halleck, a sanitary engineer of the Health Department, showed that the soil pipe was of lead and defective; the soil and waste pipes not ventilated; traps and basins throughout the house were needed; pump on third floor out of repair; sink on the same floor not used and trap dry; waste pipe and tubs and kitchen sink defective and patched with rags and putty; several putty joints and leaky patches in sewer pipes, which would allow sewer gas to escape; and that the premises were detrimental to health. The soil and waste pipes that were defective were in the cellar; they were corroded. The witness applied a peppermint test to those pipes—that is, he poured in a solution of

peppermint, as the odor, if there were any defects, would come through. He found defects at other points besides the sewer pipe in the cellar, but could not recollect where; could not say where, besides in the cellar, the test manifested or indicated any defect, but would swear it did somewhere else. He testified besides that the soil pipe was not ventilated and carried above the roof, and that the need of ventilation is not removed by having plenty of water to use in the upper part of the house, nor would having plenty of water remove any smell that might arise; that the bad condition of the pipes had evidently existed some years.

Upon the evidence, the jury gave $400 damages. From this $200 was deducted for rent due.

The falsity of the representation that the house was in good order as far as the plumbing is concerned, and that defendant had laid out $600 on the plumbing, was proved. It was not shown, however, that defendant knew of any noxious odors in the house, or that there were any previous to plaintiff's occupation. The plaintiff was bound to prove that such odors in the house were caused by the bad condition of the plumbing. The smells came from the pipes, but the proof seems to point to the want of water, and consequent want of use of the basins, sinks, bath tubs, &c., on the upper floors, as the true cause of those odors.

It was shown that the pipes in the cellar and kitchen were worn out and patched, and that their condition would allow sewer gas to escape; but it was shown that no odors came from the lower floors, where there was no lack of water, notwithstanding the leaks in the pipes there.

It was shown that on the upper floors the sinks and traps were dry, and that there was no ventilation through the ordinary means of carrying the soil pipe up and above the roof. There was no water on the upper floors, but the sanitary engineer swears that plenty of water would not obviate the necessity of ventilation nor prevent a smell. He does not directly swear that the smells in question were caused by the want of ventilation by the means suggested. He does not state that he found any smell from the pipes in the

upper floors when he examined them; nor that he applied to those pipes the test which he applied to the soil pipe in the cellar to ascertain if odors escaped from it for want of ventilation and not from want of water in the traps. From all the testimony it is an inference only that the noxious smell was due to one of those causes and not the others. There should be no reasonable doubt on this point where a recovery for fraudulent representations is sought. If the injury complained of was due to dry traps, owing to want of water on the upper floors, plaintiff cannot recover, as she had notice of the want of water before she took the house. As the evidence stands now, there seems to have been no sufficient evidence that the defects proved caused the injury. The exceptions to the refusal to dismiss on that ground at the close of plaintiff's case and at the close of the whole case were well taken.

Judgment should be reversed and a new trial ordered, with costs to abide the event.

VAN BRUNT and VAN HOESEN, JJ., concurred.

Judgment reversed and new trial ordered, with costs to abide event.